Derbigny, J.
delivered the opinion of the court.* On the 10th of October, 1812, the Orleans Navigation Company contracted with the late Daniel Clark, for the digging of the canal Carondelet and its basin. No time was fixed within which the work was to be performed; but it was covenanted that the undertaker should employ at the said work, until its completion, not less than sixty labourers. Daniel Clark died shortly after, the contract was, with the consent of the company, assigned by his executors to Francis Dussuan Delacroix, who thereby put himself in the place and stead of said Clark.
It appears that Dussuau Delacroix neglected to keep at the said work the stipulated number of negroes; owing to which the work suffered *508 much delay. After several remonstances on the subject, the company, on the 23d of December, 1816, brought suit against him for damages, to the amount of his bond and for rescision of the contract. Propositions for some amicable arrangement were then made; and, after some debate, it was finally agreed between the parties that, provided Dussuau Delacroix would place eighty good working negroes on. the canal, on or before the 13th of January then ensuing, and have the said number constantly employed in said work until it should be com pleted, agreeably to contract, the suit instituted against him would be suspended; the company reserving to themselves the right of bringing it trial, at any moment they might discover that the said number of eighty negroes were not regularly and constantly employed.“ Upon those terms then, the undertaker went on with the work, and was, if he should adhere to them faithfully, to be exonerated from any responsibility for past neglects and delays.
East'n District.
May, 1818.
It appears that, from the date of this compromise, the work was so carried on as not to incur the disapprobation of the company, until the 2d day of April, when the undertaker, pretending that the work was completed, wrote to the company to deliver it, and withdrew the *509 greatest number of his hands, leaving only such as were necessary to remove the dam, at the entrance of the canal into the basin.
On the 5th of April, a committee, appointed by the company, to examine the works which the undertaker offered to deliver, found them incomplete and defective; whereupon they determined to prosecute their suit to trial.-.and Dussuau Delacroix, having on his side brought suit for the last instalment of the price of his undertaking, both causes were consolidated and tried together. With a verdict and judgment, reducing Dussuan Delacroix's claim to fifteen thousand, instead of sixteen thousand dollars, amount of said instalment, both parties have been dissatisfied, and have appealed.
The bat question to settle is, whether the undertaker did or did not fail to comply with the stipulation last agreed upon between the parties, whereby he was bound to keep constantly employed, at the canal, eighty good negroes, until the completion of the work, agreeably to contract; for if he has fulfilled that engagement, he is discharged be any responsibility for past delay. On this point then, we are satisfied that, until the 2d of April, 1817, the undertaker did perfom that obligation. The testimony of the overseer, which we see no *510 good reason to disbelieve, leaves no doubt uü that subject: and, although he states that there were always some of the negroes, sometimes as many as twenty-five or thirty, sick, as it does not appear how long the same individuals remained disabled by sickness, no reproach can attach to the undertaker for not having replaced them-that evidence would deem sifficient, even if standing alone, to establish this fact; but the silence of the company, who had declared their intention to prosecute the suit, at any moment they might discover the required number of negroes were not regularly and constantly employed, is a circumstance strongly corroborative of the testimony by which it is attested, that the required number was there.
On the 2d of April, the undertaker wrote to the company that the work was completed, and called upon them to receive it: at the same time, he withdrew the greatest number of his hands. It appears, however, that something still remained to be done, and that a part of the work, to wit, the basin, was not made according to the dimensions fixed by the contract. One of the answers of the undertaker to this is, that he had formerly delivered to the company the two first thirds of the work, in which the defects complained of are to be found-that the com *511 pany had recieved them oaid them-and that, as to the last third, it was not pretended that theere was any defect in it.
This position does not appear to us to be supported by the expressions of the contact; it is there stipulated, that a proportion of the whole price shall he paid w hen one-third of the work shall have been done-another proportion when the work shall have progressed two-third parts-and the remainder when the whole shall be complete and finished. This is evidently intended for nothing move than fixing the terms of payment. The work itself is not divided into parts ; even the manner of carrying it on is left at the disposal of the undertaker. If, instead of digging the canal to the whole depth, as he advanced, he had chosen to dig the whole length, to certain depts, at first-ot if, instead of beginning at one end and advancing regularly, it had suited him to dig separate parts at first, no such thing as a delivery of one-third could have taken place. Neither can any such delivery have been made, according to the manner in which the work appears to have been conducted. No determinate and fixed parts of the canal and basin were measured out as composing the first and second thirds of the work. The parties themselves do not seem to know *512 where that first and where that second third end ed. No formal deliver of any part was made, and no discharge given. The money was paid according to contract, when the work was considered as having progressed, first to one-third, and then to two-thirds, of the undivided whole ; and the last payment was to be made when the whole should have been complete and finished. We think therefore, that on completing and finishing the work, the delivery of the whole was to take place, and that for any defects, then found in any part of that whole, the undertaker is answerable. We will now proceed to examine if there are such defects, and in what they consist.
It is in evidence that, when the undertaker tendered the canal as finished, some small bars, two of them the remains of dikes, still obstructed the. navigation, and that, in the whole length of the canal, there was dirt, at several distances, which had fallen from the caving in of the banks. The whole of that work was undertaken and finished, by one of the witnesses, for eight hundred dollars; so that making allowance for such filling as may have been caused by the crevasse of 1816, and for the tumbling in of the banks, nothing can tie absolutely ascribed to the neglect of the undertaker, but his having left *513 some inconsiderable remains of the dikes, at both ends of the canal.
As to the basin, it appears that it falls short of the dimensions fixed by the contract ; but when it is considered that the undertaker received his measurement from the engineer of the company, and that, from the mouth of that engineer himself, we hear that the company gave him orders to change the dimensions of the basin, on the north side, we can no longer view the description in the contract as the invariable rule of the parties. Yet the company had complained of this deficiency, on the north side of the canal, until the declaration of their own agent compelled them to give up that part of their claim. If we add to this circumstance the presumption resulting from their long silence ever since the digging of the canal was finished, much doubt must arise, as to the cause of the deficiency found on the south side. The engineers deposition on that point does not remove that doubt ; he says that he measured the east line to its end on the south, and could not he mistaken in that measurement, as he employed, for that purpose, a bain of sixty feet; that Jonhlane, the overseer of Dussuan Delacroix, fixed piquets along the line as he measured it, but that he did not put a stake at the south end- *514 on account of a bridge in the way to which the stake would have been, and that he accordingly fixed one within the line to serve him as a mark But he also states that he gave to Joublanc the perpendicular on the south side, and that this south line measured one hundred and eighty feet. He does not say that he marked and picketed that south line : but, by referring to the contract, we see that it was his duty to do it or see it done. If he did, the presumption would be, that his marks were attended to ; if he did not, the neglect is his, and consequently the company’s. To the uncertainty resulting from this testimony must he added the diffidence with which it ought to be received : for the witness, however fair and honorable his character, was called upon, to declare whether or not he had committed a mistake, the result of which was of considerable prejudice to his employers, and, in such a situation, must naturally he considered as under the influence of some bias in favor of his own accuracy
Upon the whole, we are of opinion that the damages granted by the jury to the company, under a full view of all the circumstances of the case, do not so evidently appear out of proportion with the injury, as to authorize this court *515 either to increases them, or to remand these cases to be tried anew.
Seghers for the plaintiff, Ellery and Duncan for the defendants.
It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed; and that the costs of these appeals be supported equally by the parties.

 Martin, J. did not join in this opinion, being stockholders of the company.